IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERNESTINE GILMORE HUGHES,<br><br>      Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,<br><br>      Defendant. | CIVIL ACTION FILE NO.<br><br>1:13-CV-2287-WSD-GGB |

## FINAL REPORT AND RECOMMENDATION

Plaintiff Ernestine Gilmore Hughes ("Plaintiff") has filed an action under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of the Commissioner's decision denying her application for disability, disability insurance benefits, and Supplemental Security Income. For the reasons discussed below, I **RECOMMEND** that the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND

**A.   Procedural History**

Plaintiff filed applications for disability, disability insurance benefits, and SSI in January 2007. (Tr. 249-57). An administrative law judge ("ALJ") held a hearing and issued a decision finding Plaintiff not disabled. (Tr. 74-87). The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ. (Tr. 98-99).

The ALJ held a supplemental hearing on September 14, 2011, and issued a new decision on November 22, 2011, in which she again found Plaintiff not disabled. (Tr. 11-27). Plaintiff again requested review by the Appeals Council, which denied her request in May 2013. (Tr. 1-6). This case is now ripe for judicial review.

**B.**   **Factual Background**

Plaintiff amended her alleged onset date at the hearing and requested a closed period of disability from March 22, 2005 through February 8, 2008 because she returned to work after February 8, 2008, and thereafter received income at the substantial gainful activity level. (Tr. 37). At the end of the closed period, Plaintiff was fifty-four years old. She has an eleventh grade education and previously worked as a housekeeper. (Tr. 37, 251, 316, 322, 324).

Plaintiff has physical impairments of her musculoskeletal system as well as mental impairments. Plaintiff's medical history is accurately set forth in detail in the ALJ's opinions and Plaintiff's brief, and will not be repeated here in that level of detail. Plaintiff's arguments are solely related to her mental impairments. The relevant medical facts and hearing testimony are discussed in context below.

## II. SEQUENTIAL EVALUATION PROCESS

Under the regulations promulgated by the Commissioner, an ALJ must follow a five-step sequential analysis when evaluating a disability claim. 20 C.F.R. § 404.1520(a). The five steps are as follows:

1. The ALJ first determines whether the claimant is currently working; if so, the claim is denied.

2. The ALJ determines whether the claimant has a severe, medically determinable impairment; if not, the claim is denied.

3. The ALJ decides whether the impairment equals or exceeds in severity certain impairments described in the Commissioner's Listing of Impairments; if it does, the claimant is automatically entitled to disability benefits.

4. The ALJ considers whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work; if so, the claim is denied.

5. The ALJ decides, on the basis of the claimant's age, education, work experience, and RFC, whether the claimant can perform any other gainful and substantial work within the economy. If so, the claim is denied.

20 C.F.R. § 404.1520(a)(4).

## III. STANDARD OF REVIEW

The Court must review the Commissioner's decision to ensure that it is supported

3

by substantial evidence and is based upon the proper legal standards. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is defined as "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Id. (quoting Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004)). The Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" Id. (quoting Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (second alteration in original)).

## IV.   DISCUSSION

### A.   The ALJ's Decision

The ALJ found that Plaintiff has the following severe impairments: depression, dysthymia, status post rotator cuff repair, degenerative disc disease, and status post arthroscopy of the knees. (Tr. 14). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments during the relevant period. (Tr. 16). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except that Plaintiff requires a sit/stand option as needed; she can perform occasional climbing, crouching, stooping, and overhead reaching with the right upper extremity; she must

4

avoid squatting, kneeling, crawling, and concentrated exposure to hazards; and she can perform simple, low stress work with occasional interaction with other employees, supervisors, and the public. (Tr. 18). With this RFC, the ALJ found that Plaintiff could not perform her past relevant work, but considering Plaintiff's age, education, work experience, and RFC, the ALJ relied on testimony from a vocational expert ("VE") to find that Plaintiff could perform other work existing in significant numbers in the national economy. (Tr. 25-26, 54-56). Thus, the ALJ found that Plaintiff was not under a disability from March 22, 2005, through February 8, 2008. (Tr. 26-27).

**B.     The ALJ sufficiently accounted for Plaintiff's mental limitations in the RFC**

Plaintiff argues that the RFC finding does not completely and accurately describe Plaintiff's mental limitations. (Doc. 13, Pl.'s Br., at 9-12). Specifically, Plaintiff contends that the RFC does not reflect the limitations assessed by Ellison M. Cale, Ph.D. and Will Whissell, M.D., whose opinions the ALJ adopted with some clarifications. (Id. at 11-12; Tr. 23-24).

**1.     Dr. Ellison M. Cale**

Dr. Cale performed a consultative psychological evaluation of Plaintiff in August 2007. (Tr. 526-30). Dr. Cale observed that Plaintiff exhibited subtle psychomotor retardation throughout the interview. He diagnosed Plaintiff with Major Depressive

5

Disorder and Dysthymic Disorder and opined that Plaintiff's combination of physical limitations and depressive symptoms would overwhelm her and cause her to rely on others for daily activities. (Tr. 530). He also opined that when Plaintiff is acutely depressed, "she tends to be verbally abusive towards her loved ones, and she experiences suicidal ideation." (Id.). According to Dr. Cale, Plaintiff would likely continue to need psychiatric medication management and her current support network in order to refrain from being suicidal and needing inpatient psychiatric treatment. Dr. Cale found that Plaintiff exhibited variable concentration issues, but that she could respond when short questions were presented to her. (Tr. 529). Dr. Cale did not provide specific functional limitations.

By limiting Plaintiff to simple, low stress work that required only occasional interaction with other employees, supervisors, and the public, the Court finds that the ALJ sufficiently incorporated Dr. Cale's findings into the RFC.

### 2. **Dr. Will Whissell**

Dr. Whissell treated Plaintiff at South Fulton Mental Health Center from 2004 until 2008. (Tr. 402-06, 425-42, 576-624, 627, 812-13). In January 2005, Dr. Whissell completed a Medical Assessment of Ability to do Work Related Activities (Mental). (Tr. 795-97). On the medical assessment form, Dr. Whissell checked boxes indicating

6

that Plaintiff had a "fair ability" to perform most activities, except for "no useful ability" to deal with work stress and perform complex job tasks. (Tr. 796). The form defines "fair" as "ability to function in this area is seriously limited." (Tr. 795). The only other alternatives on the form were that Plaintiff was functioning satisfactorily. (Id.). Dr. Whissell did not include on the form any medical/clinical findings that supported his assessment on the lines included for that purpose. (Tr. 796-97).

The ALJ adopted Dr. Whissell's opinions with one exception. The ALJ rejected Dr. Whissell's opinion that Plaintiff was totally unable to deal with work stress. The ALJ explained that this part of Dr. Whissell's opinion was inconsistent with the medical evidence of record that included Dr. Whissell's own treatment notes, and Plaintiff's testimony of her activities of daily living during the relevant period. The ALJ noted that Plaintiff testified that she had worked from March 2007 to September 2007 in a seasonal position and that she felt that she could have continued working and worked full time if she had been able to sit down. (Tr. 23-24, 45). Plaintiff also testified that she was able to care for her boyfriend, who had cancer, during 2006 to 2008, and she continued to search for work during the relevant period because she felt she could do the work of a housekeeper. An ALJ is not required to give a treating physician's opinion considerable

weight if evidence of the Plaintiff's daily activities contradicts that opinion. See Forrester v. Comm'r of Soc. Sec., 455 F. App'x 899, 902 (11th Cir. 2012).

With regard to the treatment notes, throughout 2005 and into 2006 and 2007, the treatment notes indicate that Plaintiff's medication, Zoloft, was helping her depression and her condition was improving. (Tr. 580, 585, 593). Dr. Whissell noted that Plaintiff was planning to attend GED classes, and generally her insight and judgment were good. (Tr. 577, 590). Notes from licensed clinical social workers in 2005 indicate that Plaintiff had learned techniques to cope with her depression and that she was demonstrating problem-solving skills. (Tr. 605-06).

Plaintiff argues that even though the ALJ stated that she was adopting the portions of Dr. Whissell's opinion that rated Plaintiff's abilities as "fair" in all of the categories except the one dealing with stress, the RFC did not take into account that "fair" was defined as "seriously limited ability to function." (Doc. 13 at 12).

However, as the Commissioner argues, a serious limitation does not mean that basic work activities are precluded. For example, Dr. Whissell indicated that Plaintiff had only a "fair" ability to maintain personal appearance, yet his treatment notes indicated that at her examinations, Plaintiff was properly groomed and casually dressed. (Tr. 406, 441, 797). Thus, it is a reasonable interpretation that Dr. Whissell did not

8

intend to opine that Plaintiff lacked all capacity to perform in the areas in which he rated her abilities as "fair." If Dr. Whissell intended to opine that Plaintiff was precluded from performing in the areas he marked "fair," he would have checked the box for "poor/none." See Cantrell v. Apfel, 231 F.3d 1104, 1107-08 (8th Cir. 2000). As the court in Cantrell explained:

> The word "fair" is both a measure of ability and disability. It is on the balance between poor ability to function and greater ability to function. A physician's use of the term "fair" does not, on its own, declare that the claimant cannot return to past work. Rather, the term "fair" requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability.

Id.

In this case, even accepting Dr. Whissell's prediction of "fair" performance in all but one category of work-related activities, the overall record, as detailed by the ALJ in her opinion (including the mental RFC assessments provided by state agency psychological consultants Dr. Mark A. Williams and Dr. Jeffrey Vidic), provides substantial evidence of the ALJ's RFC finding.

**C.     The ALJ made a proper credibility finding as to Plaintiff's testimony**

Plaintiff next argues that the ALJ failed to make a proper credibility finding as to Plaintiff's testimony. (Doc. 13 at 12-14).

9

Like many of the ALJ decisions that are reviewed in this court, the ALJ's decision in this case contains the following statement: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21). Immediately thereafter, however, the ALJ explained that she found the claimant to be "very credible; however, her testimony was not consistent with disability." (Id.). The ALJ then went on to detail the evidence, particularly Plaintiff's own testimony, that demonstrated that Plaintiff could work during the relevant time period:

> The evidence reflects the claimant began looking for work in September 2005, after she recovered from her knee surgery performed in March 2005. She looked for work and eventually found seasonal work as a ticket taker in the afternoon when the Braves played, which she affirmed allowed her time to take care of her boyfriend. Her testimony reflects she cared for her boyfriend from 2006-2008 until he died of cancer. The claimant's testimony also reveals she looked for work most of the relevant period, in part because she felt she could work.
>
> In terms of the claimant's alleged inability to stand for prolonged periods, a sit/stand option was allowed in the residual functional capacity stated herein. Notably, the claimant testified at the hearing that during the relevant period she worked from March 2007 to September 2007 as a ticket taker when the Atlanta Braves played, but indicated the standing on the

concrete was hard on her knees. As a result, she had to seek other employment. However, she affirmed if allowed the option to sit and stand as needed, she would have continued her employment as a ticket taker.

Nevertheless, she admitted, while she was there she worked 8 hours a day, and averaged 16 to 18 days a month. In addition, as previously noted she took care of her boyfriend from 2006 until his death in December 2008. In caring for her boyfriend, she gave him baths, and took him back and forth to the doctor. She was also able to perform her activities of daily living prior to looking for work in September 2005.

(Id.).

Plaintiff fails to identify any particular portion of her testimony that was improperly rejected by the ALJ. Because the ALJ expressly found Plaintiff to be credible, the argument that the ALJ failed to make a proper credibility finding is without merit.

### D. The VE's testimony provided substantial evidence to support the ALJ's finding that Plaintiff can perform other work

Plaintiff's final argument is that because the RFC included in the hypothetical to the VE was deficient, the ALJ could not rely on the VE's testimony. (Doc. 13 at 14-15).

The ALJ asked the VE to assume an individual of Plaintiff's age, education and work history who was capable of light work, who needed the option to sit or stand as needed, who can occasionally climb, crouch and stoop, who needed to avoid squatting, kneeling and crawling, who could reach overhead occasionally with the right upper

11

extremity, who needs to avoid hazards, and who is limited to simple, low stress work with occasional interaction with other employees, supervisors and the public. (Tr. 55-56). The VE testified that there are such light, unskilled jobs with a sit-stand option in the regional and national economies, including checker one, information clerk, and order caller. (Tr. 56).

Plaintiff argues that because the hypothetical did not accurately describe Plaintiff's mental limitations, the ALJ could not rely on the VE's testimony. However, as discussed under the first argument heading above, the ALJ sufficiently accounted for Plaintiff's mental limitations in the RFC.

## V. CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Commissioner's decision be **AFFIRMED**.

**IT IS SO RECOMMENDED**, this 27th day of May, 2014.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE